# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

PAUL DARROUGH, on behalf of himself
and all others similarly situated                                                                PLAINTIFF

v.                                         NO. 4:18CV00113 JLH

MARK GOBER and SUSAN POTTS,
individually and in their official capacities;
and JOHN DOES 1-10                                                                              DEFENDANTS

## OPINION AND ORDER

Paul Darrough brings this case against Mark Gober, the Sheriff of Drew County, and Susan Potts, the Drew County Detention Center administrator, in their individual and in their official capacities. His claims against them in their official capacities are, in effect, claims against Drew County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Darrough's central claim is that he was deprived of his due process rights when the Jail did not provide him a timely first appearance on one of his charges. Darrough also alleges that he was arrested without probable cause, that Gober used excessive force in arresting him, that Gober committed assault and battery, and that Gober committed a felony tort when he assaulted him. His complaint names John Does 1-10 as defendants. Finally, Darrough seeks to represent a class of persons incarcerated in the Jail in the past three years who did not receive a timely first appearance.

The parties agree on many of the relevant facts. Document #49 at 3-5; Document #54 at 4-9. In November 2016 a bench warrant was signed charging Darrough with committing the offense of theft by receiving, based on an affidavit alleging that stolen items were located on Darrough's property. In April 2017, a criminal information was filed alleging that he had committed the offense of theft by receiving. On May 10, 2017, a search warrant was executed and Darrough was arrested at his home. He was charged with possession of firearms by certain persons, criminal use of

prohibited weapons, possession of a defaced firearm, and delivery of methamphetamine. That same day, the November 2016 bench warrant alleging Darrough had committed theft by receiving was served on Darrough while he was incarcerated. Two days later, on May 12, 2017, Darrough appeared before District Court Judge Bruce Anderson at the Jail. Judge Anderson set a bond, reviewed the charges, and appointed a public defender to assist Darrough. However, the theft by receiving charge was not covered at this hearing. Instead, Darrough was arraigned only on the charges of possession of firearms by certain persons, criminal use of prohibited weapons, possession of a defaced firearm, and delivery of methamphetamine. On June 5, 2017, Darrough appeared before Circuit Court Judge Robert Gibson Jr. for a first appearance on the theft by receiving charge. Judge Gibson reduced Darrough's bond. *See* Document #30-2. Darrough bonded out approximately a week later.

Three motions are pending. Darrough and the defendants have filed cross motions for summary judgment, and Darrough has moved for the second time to certify a class of persons arrested in Drew County who did not receive a timely first appearance. For the reasons that follow, the defendants' motion for summary judgment is granted as to his first appearance claim, as well as his excessive force, assault and battery, and felony tort claims. Darrough's asserted class action is based on the first appearance claims. Because summary judgment is granted to the defendants on these claims, Darrough's class certification motion is denied.[1] Likewise, Darrough's motion for partial summary judgment as to his first appearance claim is denied.

---

[1] In *Toben v. Bridgestone Retail Operations, LLC*, the Eighth Circuit held that the district court has discretion to grant summary judgment to a defendant before ruling on a plaintiff's pending motion for class certification. 751 F.3d 888, 896 (8th Cir. 2014).

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

The defendants move for summary judgment on Darrough's claims relating to his first appearance. They argue the official capacity claims should be dismissed because Darrough has produced no evidence of an unconstitutional county policy or custom as he must under *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). They argue that Darrough's claim against Sheriff Gober individually fails because he was not personally involved in any of Darrough's alleged injuries, and that Darrough's claim against jail administrator Potts must fail because there was no underlying constitutional violation.

Section 1983 protects against deprivations of federal rights caused by a person acting under color of state law. 42 U.S.C. § 1983. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Thus, counties are not liable under section 1983 based only on injuries caused by their employees. *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-38. Rather, a county can be liable for the act of its officials or employees if the act carries out official unconstitutional county policies or unconstitutional customs. *Id.* A plaintiff must show that his constitutional injury was caused by a policy or custom of the municipality, the implementation of which amounted to deliberate indifference to his constitutional rights. *Lund v. Hennepin Cnty.*, 427 F.3d 1123, 1125 (8th Cir.

3

2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-91, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). The municipal policy or custom must be the "moving force" behind the constitutional violation. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A county is not liable, however, if there was no unconstitutional act by a county employee. *See Evans v. City of Helena-West Helena, Ark.*, __ F.3d __, 2019 WL 179015, *1 (8th Cir. Jan. 14, 2019).

"Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). To establish an official county policy, Darrough must provide evidence of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.*

To establish a county custom, however, a plaintiff must provide evidence of a "continuing, widespread, persistent pattern of unconstitutional misconduct." *Id.* at 634. He must also show either that policymakers were deliberately indifferent to the misconduct, or that they tacitly authorized the misconduct after receiving notice of it. *Id.*; *Mettler*, 165 F.3d at 1204. County liability based on county custom, as opposed to a county policy, cannot arise from a single act. *Jenkins*, 557 F.3d at 634.

Darrough asserts that his due process rights were violated because he did not receive a first appearance on the theft by receiving charge until June 5, 2017, nearly a month after his arrest. The Fourteenth Amendment's due process clause protects fundamental rights and liberties. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772 (1997). It protects against extended detentions without a first appearance after arrest by warrant. *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 673 (8th Cir. 2004). However, negligent conduct causing unintended loss of or injury to life, liberty, or property does not implicate the due process clause. *Daniels v.*

4

*Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663, 88 L. Ed. 2d 662 (1986). Nor does even grossly negligent conduct give rise to a substantive due process violation. *E.g., S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000) (en banc).

In cases like this one alleging municipal liability for a due process violation, Darrough must point to conduct by the County, or employees acting with its knowledge, that shocks the conscience given the totality of the circumstances. *Lund*, 427 F.3d at 1126; *Hayes*, 388 F.3d at 674-75 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 853, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). To hold the County responsible he must show both that his detention shocks the conscience and that it was caused by a County policy or custom evidencing a level of culpability akin to criminal recklessness. *Lund*, 427 F.3d at 1127.

In support of their summary judgment motion, the defendants attach an affidavit by jail administrator Potts. Document #49-1. Her sworn statement explains the Jail's first appearance protocol. She states that arrestees frequently receive a first appearance the same day as an arrest, but in no event more than seventy-two hours after the arrest. Potts checks every morning to determine whether new arrests have been made, and if so, she contacts a judge to hold a first appearance. The judge usually comes to the Jail on the same day as an arrest to conduct a first appearance. Potts has authorized the release of new arrestees if a judge is not able to conduct a first appearance within seventy-two hours. She also states that Darrough's theft by receiving charge was inadvertently left off the paperwork for the May 12 arraignment based on someone's mistake or negligence, which, she says, was an oversight and not intended to deprive Darrough of his constitutional rights. To her knowledge, this has not happened before or since.

Sheriff Gober testified likewise in his deposition. He testified that Potts is "very good at" getting new arrestees in front of a judge. Document #49-2 at 8. He testified that every morning she

5

finds out who has been arrested, checks to see how long people have been at the Jail, "and makes sure they get their first appearance." *Id.* He testified that Potts is "typically calling people up and saying, 'Hey, this guy's been here today, yesterday, come in yesterday. We need a first appearance.'" *Id.* He described her as "kinda pushy" because "[s]he likes the first appearance the day of [the arrest]." *Id.* at 9.

The transcript of Darrough's June 5, 2017 hearing in front of Judge Gibson, which Darrough attached to his own summary judgment motion, supports the testimony of Potts and Gober. Document #30-2. That transcript shows that Judge Gibson was surprised that Darrough had not had a first appearance on the theft by receiving charge. He commented to Darrough, "I don't know why you haven't had a first appearance. Been over there in jail since [May] 10th. Let's check and see why he was in jail on the 10th until present and no one – the jail normally notifies a judge and – . . ." *Id.* at 4. He stated, "I need to know if there's been a first appearance because I know normally Susan [Potts] will call me, or someone, if she had someone in jail. And this man's been there since the 10th of May. And if she would come over, do her checking and find out, because it's all rather bizarre." *Id.* at 7.

All of this evidence shows that the Jail's normal procedure was to provide detained persons with a prompt first appearance and that there was no policy or custom, ignored or authorized by policymakers, of deliberate indifference to their due process rights.

In his response, Darrough provides the affidavit of an investigator, David Singer, who researched first appearance and Jail records. Document #53-1; Document #54 at 2-4. Singer went to the Drew County Circuit Clerk's office to review first appearance records. Document #53-1. He states that on February 26 and 27, 2018 he reviewed the records of criminal defendants at the Circuit Clerk's office. *Id.* at 2. Singer then traveled to the Jail to review Jail log books covering the time

6

period of the records he had previously viewed at the Circuit Clerk's office. *Id.* Singer swears that "for the total of 651 criminal defendants, ninety-eight (98) criminal defendants did not receive a timely first appearance. This determination was made using the date of the arrest records and the date of the first appearance records." *Id.* at 3. Further, he avers that "it is questionable whether an additional ninety-four (94) criminal defendants received a timely first appearance." *Id.* Singer gives six reasons for his conclusions:

> No first appearance record in the file;
> An Order or Orders pushing the date of the first appearance farther and farther away, sometimes from one month to the next;
> The date of the first appearance record predates the arrest record;
> The date of the bond predates the arrest record;
> No date on the arrest record; and/or
> No date on the first appearance record in the file.

*Id.*

Singer's affidavit does not present evidence sufficient for a jury to find Drew County had an unconstitutional custom[2] that was the moving force behind Darrough's alleged constitutional deprivation. The fact that there was no date on an arrest record or no date on the first appearance record does not give rise to an inference that the particular criminal defendant did not receive a timely first appearance. Singer's affidavit does not say whether the individuals whose first appearances were delayed were in custody between their arrest and their first appearance. Moreover, it does not take into account whether any individuals received a first appearance in District Court rather than Circuit Court, as Singer only reviewed records from the Circuit Court. Darrough has the burden of proof on his claim that Drew County had a policy or custom of not providing arrestees

---

[2] Darrough has pointed to no facts showing "a deliberate choice of a guiding principle or procedure made by the [county] official who has final authority," thus he has wholly failed to establish a County policy. *Jenkins*, 557 F.3d at 633.

7

with a timely first appearance, and he has failed to present evidence sufficient to create a genuine dispute of fact on that issue.

Darrough's evidence comes up short on his first appearance claim against the County. He has provided no evidence of any policy, nor has he provided evidence of a custom, a "continuing, widespread, persistent pattern of unconstitutional misconduct," to which policymakers were deliberately indifferent or that they tacitly authorized. *Jenkins*, 557 F.3d at 634; *Mettler*, 165 F.3d at 1204. Finally, the Court cannot conclude that the totality of the circumstances shocks the conscience. See *Lund*, 427 F.3d at 1126; *Hayes*, 388 F.3d at 674-75; *Ellington v. Flowers*, 745 F. App'x 674 (8th Cir. 2018) (per curiam) (affirming summary judgment on due process claim arising out of delay in setting first appearance in a second criminal case, where the totality of the circumstances did not shock the conscience). Darrough was arrested on May 10, 2017, and was given a first appearance on May 12, 2017. Nothing in the record tends to show that the omission of the theft by receiving charge at that first appearance was intentional. Potts says that the omission was an oversight, and Darrough has presented no proof to the contrary. Summary judgment is granted on Darrough's official capacity claims against Potts and Gober.

The defendants also move for summary judgment on Darrough's claim against Gober individually for lack of a causal connection between Gober and Darrough's injury. Gober can only be liable if he is directly responsible for a deprivation of Darrough's rights and if he is not entitled to qualified immunity. *Madewell*, 909 F.2d at 1208; *see also Burlison v. Springfield Pub. Schs.*, 708 F.3d 1034, 1041-42 (8th Cir. 2013) (sheriff not liable in his personal capacity under § 1983 where he did not participate in the allegedly unconstitutional conduct and there was no evidence of a failure to train or supervise). Darrough has not provided any evidence whatsoever that Gober was personally involved in any of the conduct related to the first appearance. This claim therefore fails.

8

Finally, the defendants argue that Potts is not liable in her individual capacity because Darrough suffered no underlying constitutional injury. Potts individually can only be liable if her conduct, taken under color of law, deprived Darrough of a constitutional right—and if she is not shielded by qualified immunity. *Hayes*, 388 F.3d at 675. Darrough was given a first appearance two days after his arrest, but one charge—the charge for theft by receiving—was omitted from that first appearance. As explained previously, Potts's affidavit, along with the other evidence, shows that the omission was an oversight, not intentional misconduct. None of Darrough's proof, including Singer's affidavit, contradicts Potts's testimony that mere oversight caused the theft by receiving charge to be omitted when Darrough had a first appearance on May 12, 2017. No reasonable jury could conclude based on all the facts presented that Potts intended to deprive Darrough of a first appearance on the theft by receiving claim. *Daniels*, 474 U.S. at 328, 106 S. Ct. at 663 (negligence insufficient for due process deprivation); *McMullen*, 225 F.3d at 964 (gross negligence insufficient for due process deprivation). Even if these facts could possibly be construed as a violation of Darrough's due process rights, Potts would be entitled to a qualified immunity because Darrough's right against such conduct was not clearly established. *See Hayes*, 388 F.3d at 675 ("[A] constitutional right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" (quoting *Saucier v. Katz*, 544 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)).[3] The clearly established right must be defined with specificity. *City of Escondido, Cal. v. Emmons*, __ S. Ct. __, 2019 WL 113027 at *2 (Jan. 7,

---

[3] To the extent Darrough asserts a failure to train claim, *see* Document #26 at 3, this claim fails because, as discussed here, he suffered no underlying constitutional injury caused by an alleged failure to train. *White v. Jackson*, 865 F.3d 1064, 1076-77 (8th Cir. 2017) (holding that individual and official capacity failure to train claims fail where there was no underlying substantive claim against the individual defendants).

2019). While it was clearly established in 2017 that a person arrested for a crime has a clearly established right to a first appearance, it was not clearly established that a person's constitutional right is violated if he receives a first appearance on the charges against him except for one charge that was inadvertently omitted.

Darrough has also sued Gober for using excessive force during his arrest. The defendants move for summary judgment because Darrough has stated that Gober did not use any force on him at the time of his arrest. In response to the defendants' motion, Darrough agrees that Gober did not use excessive force on him: in his deposition, Darrough testified that Gober was not part of the group of officers who allegedly used excessive force on him and in fact he was in the house at the time. Document #54 at 10; Document #49-3 at 8-9. Summary judgment is therefore granted on any excessive force claim.

Darrough also asserts claims for assault and battery and felony tort under Arkansas law against Gober predicated on his arrest. Based upon Darrough's concession that Gober did not use excessive force on him, and on his testimony that Gober was not even in the group of officers who allegedly used force on him, his state law claims for assault and battery and felony tort fail. *See* 1 Howard W. Brill & Christian H. Brill, Law of Damages § 33.6 (6th ed. 2014) (listing elements of assault and battery under Arkansas law).

As the Court noted at the beginning of this Order, summary judgment is granted to the defendants in part. The defendants' motion is styled as a motion for summary judgment, not for partial summary judgment. Darrough's complaint asserts various claims other than the first appearance and excessive force claims, including an allegation under Count IV that "Gober caused false and baseless charges to be filed against the Plaintiff," and that "[a]ll charges were resolved in Plaintiff's favor." Document #26 at 6. He also mentions in his Complaint's statement of facts that

he was charged without probable cause. *Id.* at 2. In his response to the defendants' motion, Darrough points out that the motion is not a dispositive motion. He states: "Defendants' Motion is not dispositive, since it does not address the arrest without probable cause allegations. Should the Court wish to address these allegations, Plaintiff requests notice." Document #53 at 1.

The Court therefore grants summary judgment on all of Darrough's claims against Potts and Gober except his lack of probable cause claim against Gober. Darrough's claims against John Does 1-10, who have not been identified, are dismissed without prejudice.

The defendants' motion for summary judgment is GRANTED IN PART. Document #47. Darrough's motion to certify a class is DENIED. Document #27. Darrough's motion for partial summary judgment is DENIED. Document #30.

IT IS SO ORDERED this 25th day of January, 2019.

*[signature: J. Leon Holmes]*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE